Gerald OSBORNE *v.* STATE of Arkansas

CR 80-154                                              643 S.W.2d 251

Supreme Court of Arkansas
Opinion delivered December 13, 1982

48

*William C. McArthur,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant was charged with two counts of possession of a controlled substance with intent to deliver and one count of possession only. He was tried by a jury on July 17, 1979 and found guilty on all three counts. From that conviction he brings this appeal. We find no merit in the first two points raised, but there is merit in the third point and we reverse the case in part.

Appellant first argues that the search warrant used to seize the controlled substances was defective and the evidence should have been suppressed. He contends the search was in violation of A.R.Cr.P. 13.2 because it was conducted at 8:20 p.m. and with insufficient justification. Whether an encroachment of 20 minutes on the 8:00 p.m. time limit set by Rule 13.2 would amount to a substantial violation is questionable — see A.R.Cr.P. 16.2. But we need not reach that issue as the appellant failed to raise the argument before the trial court. *Gatlin* v. *State,* 262 Ark. 485, 559 S.W.2d 12 (1977).

Appellant also claims the warrant was invalid because of the form of the affidavit. In the space provided for detailing the facts constituting probable cause, "see attachment" is typed in. On the attached sheet are the facts with the officer's signature at the bottom. At the suppression hearing the judge who signed the warrant testified he read the affidavit and had the officer sign it and the attachment in his presence. He said this procedure was often followed when the form failed to provide enough space for all the information. We approved this procedure in *Heard* v. *State,* 272 Ark. 140, 612 S.W.2d 312 (1981), in a similar situation, and said that where the information would not fit in the space provided, the statement was incorporated in a practical and common sense manner.

The appellant's second argument relates to the instructions. He first contends that it was error not to give a requested instruction which read:

"Mere occupancy of a place where drugs are found does not establish possession of controlled substances without additional evidence of possession."

The trial court refused the instruction because it was an incomplete statement of the law. We agree. The court gave the correct AMCI instruction on possession, but the appellant also contends that it erred by not including any instructions on actual and constructive possession. Following the possession instructions, the AMCI 3304 gives the definition of actual and constructive possession and notes that these instructions should be given when constructive possession is at issue. In the brief discussion of the proffered instructions, the issue of constructive possession was never directly discussed, and the record shows that at one ponit the prosecution said the state was not alleging constructive possession, to which the appellant made no reply. In addition, we stated in *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980), a criminal case, that the parties are implicitly required to request an applicable AMI, or upon tendering a substitute instruction, to state into the record, the reasons they believe the AMI is inadequate or inaccurately states the law. This the appellant failed to do. For the reasons stated we find that the appellant has waived his objection to the instructions as they were given.

Appellant's last argument challenges the sufficiency of the evidence. The facts reveal that on January 11, 1978, the police went to appellant's residence with a search warrant. When they arrived his wife answered the door and told them appellant was across the street at his parents' home. One of the officers went to get him while the others began the search. When the appellant arrived, the police had already found controlled substances and the appellant was arrested. He was searched incident to his arrest and a small vial of cocaine was found in his pocket. At the residence the police confiscated phentermine pills from a dresser in one of the bedrooms and from a suitcase in the hall. Marijuana was found on a tray in the living room, where appellant's wife and others were present.

We have said that possession need not be actual, physical possession, but may be constructive, when one controls a substance or has the right to control it. Constructive possession can be implied when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control, or to the joint control of the accused and another, but neither actual nor exclusive possession of the contraband is necessary to sustain a charge of possession. See *Cary* v. *State,* 259 Ark. 510, 534 S.W.2d 230 (1976). However, we have also held that joint occupancy of premises alone will not be sufficient to establish possession or joint possession unless there are additional factors from which the jury can infer possession. See *Cary* v. *State, supra; Ravellette* v. *State,* 264 Ark. 344, 571 S.W.2d 433 (1978).

There are two separate problems involved in establishing "exclusive control" of the premises in order to impute possession. The first is whether the accused is a sole or joint occupant, and the second is, if the accused is the sole occupant, does he have actual exclusive control of the premises.

The problem of joint occupancy arises because of the rule that when joint occupancy is the only evidence the state has, there must be some additional link between the accused and the contraband. On the other hand, if the state is proving a case through constructive possession of contrabnd by the occupant of a dwelling, it is not required in the first instance to disprove joint occupancy. If, however, evidence is presented that indicates joint occupancy and occupancy is the only evidence the state offers to prove possession, it must either provide the necessary link or prove the accused was in sole possession (but see further discussion below). For example, in *Lee* v. *State,* 270 Ark. 892, 608 S.W.2d 3 (1980), the state was establishing its case through constructive possession. The defendant presented evidence to establish joint occupancy but the state countered with other evidence to establish sole occupancy by the defendant and we upheld the sufficiency of the evidence on appeal.

If it is proved that the defendant is the sole occupant, or there is no evidence to indicate the defendant is a joint occupant, is that evidence alone sufficient to establish that he had exclusive control over the premises and, therefore, over the contraband?

It has been held in other jurisdictions, where one has exclusive possession of a dwelling where narcotics are found it may be inferred, even in the absence of other incriminating evidence, that such person knew of the presence of the narcotics and had control of them (see *Davis* v. *State,* 262 A.2d 578 [1970]), and such circumstances are sufficient to sustain a conviction. See *People* v. *Nettles,* 178 N.E.2d 361. While we agree that such evidence can be sufficient to sustain a conviction, we don't agree that the rule will fit all cases. There may be other circumstances that detract from an inference of possession to the point the evidence becomes insufficient to establish control of the contraband.

In two somewhat similar cases, where the defendant was the occupant of the premises, but other individuals were present and in possession of contraband, the courts in each case found the defendant not in possession. *People* v. *Sonabria,* 423 N.Y.S.2d 223 (1979) and *People* v. *Schrieber,* 310 N.Y.S.2d 551 (1970). In *Sonabria,* a sale of heroin had taken place in the defendant's kitchen just a few feet away from her. The court stated "the record is barren of any evidence tending to establish that the defendant exercised, or that she could have exercised, any dominion or control over the narcotics in any manner . . . although the sale occurred in her apartment she did not and could not have exercised that dominion and control over the narcotics necessary to establish a constructive possession." In *Schreiber* a "pot" party was being held at appellant's apartment. At the time the police arrived, the appellant was not present, and a search turned up controlled substances throughout the apartment. There was testimony that a sub-tenant was sleeping there and that the appellant had ceased to live in the apartment for at least a week. But there were enough of the appellant's belongings there to warrant the conclusion that the premises were still the appellant's, and it was also clear that the appellant had consented to the party. There was

additional evidence that the door was usually open, that several persons who had in the past used marijuana were in the apartment on the night of the raid, and that people came in to use or borrow paints and artist's supplies. The court stated that control of the premises gave rise to the inference of unlawful possession and acknowledged that mere access by other persons was insufficient to defeat a charge of constructive possession. But under the facts in *Schrieber* the court found the evidence insufficient on the issue of control.

Here, we are faced with both aspects affecting the defendant's exclusive control of the premises, i.e. the evidence suggesting joint occupancy and the evidence suggesting lack of actual control of the premises. The only evidence the state presented on the issue of possession of the controlled substance was the stipulation the appellant resided at the premises, plus the cocaine found on his person. But there are other circumstances that raise questions as to the defendant's control of the premises and its contents. There were four people present when the police arrived, though not the appellant. Although there was no specific testimony appellant's wife lived there, it seems reasonable to assume she shared the residence with her husband.

Some of the pills were found in a bedroom, but there was no testimony as to whose bedroom it was, whose belongings were there or whether both bedrooms were regularly used. Other pills were found in a suitcase in the hall, which only adds to the speculation. We are told nothing about it except that it was in the hall. The record gives us no basis for rational inferences. The marijuana was on a tray in the living room near the four individuals but how long they had been there or how long the appellant had been gone, we aren't told. We know only that appellant was not there when the police arrived.

Looking at the evidence in its entirety and most favorably to the appellee, it fails to indicate exclusive control of the premises in either sense of the term, or to indicate the right to control the contents therein by the defendant; hence, we are left with unresolved doubts. The only evidence the state presented was the stipulation that the home was the

appellant's residence. There is no other evidence that points with any certainty to appellant's control. It is our duty upon review to view the evidence in the light most favorable to the appellee, and affirm if there is substantial evidence to support the finding of the jury. Substantial evidence means that the jury could have reached its conclusion without having to resort to speculation or conjecture. *Cassel* v. *State,* 273 Ark. 59, 616 S.W.2d 485 (1981). For the reasons discussed, we find that only speculation and conjecture could have sustained a conviction for the possession with intent to deliver on counts 2 and 3 for the marijuana and phentermine and therefore we must reverse the convictions for both counts. The judgment with respect to the charge of cocaine is affirmed.