# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00047-CV

**Sergeant Enterprises, Inc., Appellant**

**v.**

**Carole Keeton Strayhorn, Successor-in-Interest to John Sharp, Comptroller of Public Accounts of the State of Texas and Greg Abbott, Successor-in-Interest to John Cornyn and Dan Morales, Attorney General of the State of Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. 96-15475, HONORABLE DAVID CAVE, JUDGE PRESIDING

## O P I N I O N

In this suit for a refund of franchise taxes, Sergeant Enterprises, Inc. ("appellant") appeals from the grant of a summary judgment in favor of Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, "Comptroller").[1]  In two issues, appellant asserts that the district court erred in granting the Comptroller's motion for summary judgment and denying its own.  Appellant urges that it conclusively proved its entitlement to a refund by offsetting its 1995 franchise tax liability with the

---

[1] We have substituted the current Attorney General and the current Comptroller as the appropriate parties.  *See* Tex. R. App. P. 7.2(a).  The Comptroller and the Attorney General are statutory defendants in tax protest suits.  *See* Tex. Tax Code Ann. § 112.151(b) (West 2002).  Because their interests do not diverge in this case, for convenience we will refer to them collectively as "Comptroller."

business losses of a predecessor entity that appellant acquired through a merger in 1994. Holding that, in calculating its net taxable earned surplus, appellant may not deduct the business losses of a predecessor corporation that it acquired through a merger, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the surviving corporation of a two-tiered merger that occurred in 1994. Sergeant Oil & Gas, Inc. ("Oil & Gas") merged with SOG Acquisition, Inc., which in turn merged with appellant. At the time of the mergers, Oil & Gas had a cumulative business loss of approximately $954,854 for the years 1992 through 1994.

Most Texas corporations, including appellant, are required to pay franchise taxes for the privilege of doing business in Texas. *See* Tex. Tax Code Ann. ch. 171 (West 2002);[2] *Universal Frozen Foods Co. v. Rylander*, 78 S.W.3d 588, 590 (Tex. App.—Austin 2002, no pet.). In 1995, appellant paid franchise tax of $144,606.38. In March 1996, upon the advice of a tax consulting firm, appellant filed an amended 1995 franchise tax return, deducting the $954,854 business loss of Oil & Gas and requesting a refund of $42,968.43. The Comptroller denied the refund request, citing its policy that a corporation may not transfer its business loss to another corporation by merger. *See* Texas Comptroller of Public Accounts, STAR System No. 9610668H, *at* http://aixtcp.cpa. state.tx.us/star.

---

[2] We will refer to the current codes for convenience except when an amendment to a statute is relevant to our analysis.

In December 1996, appellant sued the Comptroller in district court for a refund. *See* Tex. Tax Code Ann. § 112.151 (West 2002). After a five-year period of no activity in the suit, the case was placed on the dismissal docket. The district court granted appellant's unopposed motion to reinstate, then both parties filed traditional motions for summary judgment. In December 2002, the district court rendered final judgment, granting the Comptroller's motion for summary judgment and denying appellant's motion. By two issues, appellant contends that the tax code allows the surviving corporation after a merger to carry forward the business loss of the non-surviving corporation as a deduction to offset franchise tax liability and accordingly that the district court erred in granting summary judgment in favor of the Comptroller.

**STANDARD OF REVIEW**

The standards for review of a traditional summary judgment are well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A plaintiff must establish all elements of the cause of action as a matter of law. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant, however, must disprove at least one essential element of each of the plaintiff's theories of recovery or conclusively establish each element of an affirmative defense to prevail. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282

3

(Tex. 1996). We review the trial court's decision to grant summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

Generally, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and thus not appealable. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, when both parties move for summary judgment and the district court grants one motion and denies the other, the unsuccessful party may appeal both the grant of the prevailing party's motion and the denial of its own. *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). We will review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). Because the district court did not state the basis for granting summary judgment, the appellant must negate all grounds that support the judgment. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 381 (Tex. 1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). If the appellant fails to negate each ground on which the judgment may have been rendered, we must uphold the summary judgment. *See Carr*, 776 S.W.2d at 569.

## ANALYSIS

In its first issue, appellant contends that the tax code allows the surviving corporation of a merger to carry forward the business loss of a non-surviving corporation as a deduction to offset franchise tax liability. Appellant urges that the Comptroller's interpretation, that only the company incurring a loss may take the business loss deduction, conflicts with the plain language of the

4

relevant statute. The section at the heart of this dispute provides for the deduction of business losses as follows:

> For purposes of this section, a business loss is any negative amount after apportionment. The business loss shall be carried forward to the year succeeding the loss year as a deduction to net taxable earned surplus, then successively to the succeeding four taxable years after the loss year or until the loss is exhausted, whichever occurs first, but for not more than five taxable years after the loss year.

Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.09, 1991 Tex. Gen. Laws 160 (amended 1995, 2001) (current version at Tex. Tax Code Ann. § 171.110(e) (West 2002)).

As a preliminary matter, appellant urges that because the imposition of a franchise tax is a taxing statute rather than an exemption, it should be liberally construed *in favor* of the taxpayer. Whether we characterize the tax as an imposition of tax or an exemption determines who bears the burden of proving its application. Because the legislature enacts statutes imposing franchise tax purely for revenue purposes, we liberally construe franchise tax statutes to effectuate their purpose. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied) (citing *Federal Crude Oil Co. v. Yount-Lee Oil Co.*, 52 S.W.2d 56, 61 (Tex. 1932)). Statutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. *Id.* Deductions and exemptions, on the other hand, are strictly construed against the taxpayer. *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *accord Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979).

The provision at issue in this case, section 171.110(e) of the tax code, expressly authorizes a "deduction" of a business loss and is tantamount to an exemption. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 872 (Tex. App.—Austin 2002, pet. denied) (citing *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.—Austin 1998, pet. denied)). Therefore, it must be strictly construed in favor of the Comptroller. Deductions being matters of legislative "grace," *Upjohn Co.*, 38 S.W.3d at 606 (quoting *Commissioner v. Sullivan*, 356 U.S. 27, 28 (1958)), appellant has the burden of clearly demonstrating that it is entitled to the deduction. *North Alamo Water Supply*, 804 S.W.2d at 899.

In further construing this statute, we are mindful of several rules of statutory construction. Statutory construction is a question of law, which we review *de novo*. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We must ascertain and give effect to the legislature's intent for the provision we are construing. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex. 1974). The legislature's intent should be determined by reading the language used in the particular statute and construing the statute in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981). Further, we should read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship*, 81 S.W.3d at 873; *City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex. App.—Austin 1996) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)), *aff'd*, 7 S.W.3d 109

(Tex. 1999); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.25 (6th ed. 2000) (stating that there is generally an inference that omissions from a statute are intentional).

Furthermore, we give serious consideration to an agency's construction of a statute, as long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *see Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 762 (Tex. App.—Austin 2000, pet. denied). In ascertaining the scope of an agency's authority, we give great weight to the contemporaneous construction of a statute by the administrative agency charged with its enforcement. *Tarrant Appraisal Dist.*, 845 S.W.2d at 823. We recognize that the legislature intends an agency created to centralize expertise in a certain regulatory area "be given a large degree of latitude in the methods it uses to accomplish its regulatory function." *Reliant Energy, Inc. v. Public Util. Comm'n*, 62 S.W.3d 833, 838 (Tex. App.—Austin 2001, no pet.) (citing *State v. Public Util. Comm'n*, 883 S.W.2d 190, 197 (Tex. 1994)).

Application of these rules leads us to conclude that the Comptroller's interpretation of the business loss deduction statute is correct.

To put the parties' arguments in context, we turn first to the history of section 171.110. Since 1992, the major portion of a corporation's franchise tax has been based on its "net taxable earned surplus." *See* Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.03, 1991 Tex. Gen. Laws 153, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 394, § 10, 1999 Tex. Gen. Laws 2454, 2454-55 (current version at Tex. Tax Code Ann. § 171.002 (West 2002)). To calculate the net taxable earned surplus, a corporation "shall" carry forward and deduct unused business losses for five years after the year in which the loss occurred. Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch.

7

5, § 8.09, 1991 Tex. Gen. Laws 160 (amended 1995, 2001). Appellant contends that the phrase "business loss shall be carried forward" mandates that appellant carry forward the loss of Oil & Gas. The Comptroller responds that earned surplus applies to "a corporation" and "the corporation," meaning the corporation that incurred the loss. Tex. Tax Code Ann. § 171.110(a), (a)(1) (West 2002).

The Comptroller has employed this interpretation since late 1992. *See, e.g.*, Texas Comptroller of Public Accounts, STAR System No. 9308084L.2, *at* http://aixtcp.cpa.state.tx.us/star (first letter ruling deciding the issue, Dec. 2, 1992). This interpretation stems from the concept of "separate entity," under which each corporation is responsible for its own taxes. *Id.* ("[u]nder the concept of separate entity, the business loss from a corporation can not be transferred to another corporation as a result of a merger or other method of combining two corporations"); *see Sunoco Terminals, Inc. v. Bullock*, 756 S.W.2d 418, 421 (Tex. App.—Austin 1988, no writ) ("[E]ach distinct entity is responsible for paying franchise taxes. When two corporations merge, there remains only one entity responsible for the tax."); *Texaco, Inc. v. Calvert*, 526 S.W.2d 630, 634 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (concluding that Texaco could not include gross receipts of its subsidiaries as part of its gross receipts because "[t]o do so would ignore the fact of their separate corporate existence").

In 1996, the Comptroller incorporated its interpretation into an agency rule, to apply retroactively to franchise tax reports originally due after January 1, 1992, that a "corporation may not convey, assign, or transfer a business loss to another entity including, but not limited to, by merger." 21 Tex. Reg. 879 (1995) (codified at 34 Tex. Admin. Code § 3.555(g)(3)) (Comptroller

8

of Pub. Accounts). In the 2001 legislative session, during the pendency of this litigation, the legislature amended section 171.110(e) by adding the following language: "A business loss can be carried forward only by the corporation that incurred the loss and cannot be transferred to or claimed by any other entity, including the survivor of a merger if the loss was incurred by the corporation that did not survive the merger." Act of June 15, 2001, 77th Leg., R.S., ch.1275, § 2, 2001 Tex. Gen. Laws 3068 (codified at Tex. Tax Code Ann. § 171.110(e) (West 2002)).

Appellant argues that it is entitled to deduct Oil & Gas's business losses because (i) section 171.110(e) on its own terms allows one corporation to transfer its business loss to another corporation; (ii) section 171.110(e), when read in tandem with section 5.06A(2) of the business corporation act, allows the transfer of a business loss; *see* Tex. Bus. Corp. Act Ann. § 5.06A(2) (West 2003); (iii) rule 3.555(g)(3) is invalid because it contradicts the plain meaning of section 171.110(e); *see* 34 Tex. Admin. Code § 3.555(g)(3) (2002); and (iv) the 2001 amendment to section 171.110(e) does not apply here. Finally, appellant proposes that Texas replace the long-standing policy of taxing corporations as separate entities with the continuity of business doctrine, which allows the transfer of a business loss after a merger. We will separately address each of appellant's arguments.

Appellant first contends that it is entitled to carry forward Oil & Gas's business loss under the "plain language" of section 171.110(e) of the tax code. The Comptroller responds that appellant may not carry forward the loss because section 171.110(e) does not affirmatively permit a merger survivor to deduct the losses of a predecessor corporation. In our interpretation, we cannot consider section 171.110(e) in isolation, but must consider how this section operates within the

9

franchise tax statute as a whole. *See Sharp v. House of Lloyd*, 815 S.W.2d 245, 249 (Tex. 1991) (in determining meaning of statute, court must consider entire act, its nature, and its objects).

Section 171.110 of the tax code sets forth the formula for calculating net taxable earned surplus of a corporation. Tex. Tax Code Ann. § 171.110. Included in the calculation is the deduction of a business loss, which "shall be carried forward to the year succeeding the loss year as a *deduction*" until exhausted or for up to five successive years. *Id.* § 171.110(e) (emphasis added). This statute expressly designates a business loss as a deduction; when seeking a deduction, a claimant has the burden of clearly demonstrating that it is entitled to the deduction. *North Alamo Water Supply*, 804 S.W.2d at 899. Given that Texas taxes corporations as separate entities, *see Sunoco Terminals, Inc.*, 756 S.W.2d at 421; *Texaco, Inc.*, 526 S.W.2d at 634, we cannot agree with appellant that the phrase "*shall* be carried forward" necessarily mandates that a successor corporation carries forward the business loss of its predecessor. When interpreting a statute, we must construe it in a manner that is "not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain." *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920). Mindful that the "tax code requires that a corporation's net taxable earned surplus be calculated solely on that corporation's own financial condition," *Universal Frozen Foods*, 78 S.W.3d at 593, we decline to extend the language of section 171.110(e) to allow the transfer of a business loss after a merger. To do so would frustrate the revenue-raising purpose of franchise tax statutes. *See Rylander v. 3 Beall Bros. 3, Inc.*, 2 S.W.3d 562, 566-67 (Tex. App.—Austin 1999, pet. denied).

Appellant next argues that section 171.110(e) permits the transfer of a business loss after a merger, when read in tandem with section 5.06A(2) of the business corporation act. Tex. Bus.

10

Corp. Act Ann. § 5.06A(2). Section 5.06A(2) reads in part: in a merger, "all rights, title and interests to *all real estate and other property* owned by each . . . entity that is a party to the merger shall be allocated to and vested in one or more of the surviving or new . . . corporations." *Id.* (emphasis added). While conceding that no Texas court has considered whether a business loss is property, appellant contends that the phrase "other property" in section 5.06A(2) encompasses a business loss. The Comptroller responds that reading section 5.06A(2) into section 171.110(e) would frustrate the purpose of the franchise tax: to raise revenue. The Comptroller also argues that the Comptroller has never applied the business corporation act to deduction statutes, although some franchise tax code provisions reference the business corporation act. *See* Tex. Tax Code Ann. § 171.101 (West 2002) (referring to business corporation act for definition of "stated capital"); *id.* § 171.113 (West 2002) (employing business corporation act definition of "close corporation").

There is generally an inference that omissions in a statute are intentional. Singer, *supra*, § 47.25. Had the legislature intended for tax code section 171.110(e) to incorporate the merger provisions of the business corporation act, it could have amended section 171.110(e) to refer expressly to section 5.06A(2). "The legislative intent becomes more clear when we consider that the legislature is presumed to enact a statute with the complete knowledge of existing law and with reference to it." *Upjohn Co.*, 38 S.W.3d at 608 (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)). Given the long-standing separate taxable entity policy in Texas and the revenue-raising function of the franchise tax act, we find no basis for reading the merger provisions of business corporation act section 5.06A(2) in tandem with the calculation of net taxable earned surplus provisions of tax code section 171.110. Accordingly, we need not decide whether the phrase

11

"all real estate and other property" in section 5.06A(2) of the business corporation act includes business losses.

Appellant next contends that because section 171.110(e) "does not prohibit" the transfer of a business loss after a merger, the Comptroller acted without statutory authority in promulgating rule 3.555(g)(3), which states that a "corporation may not convey, assign, or transfer a business loss to another entity including, but not limited to, by merger." 34 Tex. Admin. Code § 3.555(g)(3). Appellant urges that there is "no reason to exclude business losses because they are based on the activities of a nonsurvivor before the merger." We disagree.

In construing a statute, regardless of whether the statute is facially ambiguous, we may give substantial weight to an administrative agency's contemporaneous interpretation, so long as the interpretation is reasonable and does not contradict the plain language of the statute, especially when the agency has special expertise in the area. Tex. Gov't Code Ann. § 311.023(6) (West 1998); *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994); *Upjohn Co.*, 38 S.W.3d at 609; *see also* Tex. Tax Code Ann. § 111.002(a) (West 2002) (enabling the Comptroller to adopt rules that do not conflict with state or federal law). Here, section 171.110(e) is silent on whether the survivor of a merger may carry forward the business loss of its predecessor. Rule 3.555(g)(3) thus acts to clarify who may deduct a business loss under section 171.110(e). Given the Comptroller's policy that corporations are taxed as separate entities, it stands to reason that only the corporation incurring the business loss may deduct that loss. Therefore, we conclude that the Comptroller acted within its statutory authority in promulgating rule 3.555(g)(3).

12

Appellant then argues that even if rule 3.555(g)(3) is valid, the rule does not apply to appellant's refund claim because it was not adopted until February 16, 1996, after appellant's 1995 franchise tax return was due (but before appellant filed its amended return), and impermissibly acts as a retroactive law. The rule states that "the provisions of this section apply to franchise tax reports originally due after January 1, 1992," when the net taxable earned surplus provisions of the franchise tax act were enacted. 21 Tex. Reg. 879 (1995) (codified at 34 Tex. Admin. Code § 3.555(a)) (Comptroller of Pub. Accounts).

Retroactive application of a law is unconstitutional when it destroys or impairs vested rights. Tex. Const. art. I, §16; *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002). The same principle applies to administrative rules. *Grocers Supply Co. v. Sharp*, 978 S.W.2d 638, 643 (Tex. App.—Austin 1998, pet. denied). A vested right is a property right, which the constitution protects as any other property. *Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 560 (Tex. 1916). Courts generally presume that a statute will apply prospectively, *Ex parte Abell*, 613 S.W.2d 255, 258 (Tex. 1981), but this general rule does not apply when a rule is procedural or remedial. *City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997). This is because procedural or remedial statutes usually do not affect a vested right. *Id.*

Entitled "Determination of Net Taxable Earned Surplus," section 171.110 sets forth a framework for ascertaining net taxable earned surplus. Tex. Tax Code Ann. § 171.110. The title of rule 3.555 is "Earned Surplus: Computation," and it sets forth details for calculating the net taxable earned surplus figure. Given that rule 3.555 fleshes out the framework already established in section 171.110, we view this rule as a procedural tool for calculating net taxable earned surplus.

13

The rule logically applies to franchise tax reports due after January 1, 1992, because that is when the net taxable earned surplus statutes went into effect.

Furthermore, even if rule 3.555(g)(3) does not apply to appellant's amended 1995 franchise tax report, the summary judgment evidence showed that since late 1992, the Comptroller had consistently interpreted section 171.110(e) as disallowing the transfer of a business loss. *See, e.g.*, Texas Comptroller of Public Accounts, STAR System No. 9308084L.2, *at* http://aixtcp.cpa. state.tx.us/star (Dec. 2, 1992). The Comptroller's interpretation was thus publicly available to appellant since late 1992.

Appellant next contends that the 2001 amendment to section 171.110(e), which expressly states that the survivor of a merger may not deduct its predecessor's business loss, does not apply to appellant's amended 1995 return. Act of June 15, 2001, 77th Leg., R.S., ch.1275, § 2, 2001 Tex. Gen. Laws 3068 (codified at Tex. Tax Code Ann. § 171.110(e) (West 2002)). We agree. In the committee hearing in which this amendment was discussed, legislators expressed concern that the amendment not affect pending litigation. *See Hearings on Tex. S.B. 1689 Before the House Comm. on Ways & Means*, 77th Leg., R.S. 6, 8, 19, 40 (May 9, 2001). Nothing in the amendment or its legislative history demonstrates that the amendment was to be applied retroactively.

Finally, appellant proposes that Texas should discard its long-standing policy of taxing corporations as separate entities in favor of the continuity of business doctrine—which the federal government follows[3]—to allow the transfer of a business loss after a merger. This is for the

---

[3] *See* 26 U.S.C.A. § 381 (West 1995) (allowing acquiring corporation to carry forward net operating loss of transferor corporation after merger).

legislature, not the courts, to decide.  Moreover, to read a transferable business loss into section 171.110(e) would circumvent both the revenue-raising purpose of franchise tax and the rule of strictly construing a deduction against a claimant.  Informing our decision is the Comptroller's consistent interpretation since 1992 that a business loss is not transferable.[4]  "The consistent construction by an administrative agency charged with effectuating the policy of an enactment carries very considerable weight."  Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum. L. Rev. 527, 543 (1947).  The comptroller's interpretation aside, when amending section 171.110(e) in 2001, the legislature rejected the "Frazier amendment," which would have followed the federal model in allowing the survivor of a merger to carry forward the nonsurvivor's business loss.  *See Hearings on Tex. S.B. 1689 Before the House Comm. on Ways & Means*, 77th Leg., R.S. 5 (May 9, 2001).  The legislature in fact recognized the Comptroller's interpretation and the separate taxable entity doctrine with its comment that "Subsection (e), section 171.110, Tax Code, as amended by this Act, is a clarification of existing law and not a substantive change in law."  Act of June 15, 2001, 77th Leg., R.S., ch.1275, § 3, 2001 Tex. Gen. Laws 3068.  In light of the legislature's ratification of the Comptroller's long-standing policy, we decline to overturn the separate taxable entity doctrine in Texas.

---

[4] In its *amicus curiae* brief, Reliant Energy Gas Transmission Company argues that the Comptroller's interpretation has been inconsistent.  Appellant has never raised this argument; therefore, it has not been preserved for our review.  Tex. R. App. P. 33.1.  Further, we may not consider Reliant's exhibits in support of its argument because those documents were not before the trial court when it ruled on the parties' motions for summary judgment.

## CONCLUSION

We hold that appellant may not carry forward the business loss of the company with which it merged, Oil & Gas, to offset its franchise tax liability for 1995. Section 171.110(e) of the tax code does not allow the transfer of a business loss, either on its own terms or when read with section 5.06A(2) of the business corporation act. The Comptroller's letter rulings and interpretive rule, 34 Texas Administrative Code section 3.555(g)(3), which disallow the transfer of a business loss, do not contradict the plain meaning of section 171.110(e). Accordingly, the district court did not err in granting the Comptroller's motion for summary judgment and denying appellant's motion for summary judgment. We overrule both of appellant's issues and affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: July 11, 2003

16